NOT DESIGNATED FOR PUBLICATION

No. 124,524

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHAWN P. O'BRIEN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Submitted without oral argument. Opinion filed January 5, 2024. Affirmed in part, reversed in part, and remanded.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant, and *Shawn P. O'Brien*, appellant pro se.

*Brian Deiter*, assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., HURST, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: In this direct appeal, Shawn P. O'Brien contests his convictions for three counts of aggravated indecent liberties with a child and five counts of sexual battery. O'Brien claims several trial and procedural errors and contends that there was insufficient evidence presented to prove his guilt of sexual battery. The record compels us to affirm his convictions for aggravated indecent liberties with a child and three counts of sexual battery. But the record also compels us to reverse two counts of sexual battery and remand for new trial on those counts because the trial court prohibited O'Brien from challenging the credibility of his accusers.

1

*Acts committed in O'Brien's home were reported first, followed by reports of his actions taken while he was working as a massage therapist.*

In January 2018, Megan Rubio—a licensed social worker for the Kansas Department for Children and Families—received a sexual abuse report. Rubio interviewed J.Y., the alleged victim, in February 2018 at J.Y.'s middle school. During that conversation, J.Y., a minor, stated that she had been touched inappropriately by a man named Shawn, but J.Y. chose not to disclose any other information about those events. Rubio interviewed J.Y. again in June 2018 after the Department received another sexual abuse report.

During the June 2018 interview, J.Y., who was O'Brien's older son's friend, told Rubio that she had spent the night at O'Brien's house when she was around nine years old. During the sleepover, O'Brien gave J.Y. a massage "that started off as a head massage and moved to inappropriate touching." J.Y. later elaborated and stated that O'Brien had touched her breasts and the inside of her vagina under her clothes. J.Y. also said O'Brien did this on three separate occasions. All incidents occurred when J.Y. was around 9 or 10 years old. Following this interview, Rubio reported J.Y.'s allegations to the police.

More details about these incidents came out at the trial. J.Y. testified that she first met O'Brien when she was 9 or 10 years old, and he was a family friend. J.Y. said the first time the inappropriate touching occurred was during a sleepover at O'Brien's house. Sometime during that night, O'Brien asked J.Y. whether she wanted a massage. When O'Brien asked the question, J.Y. was in the living room of O'Brien's house, and there were other children sleeping in the same room. J.Y. agreed to the massage. J.Y. said O'Brien began by giving her a head massage before he eventually rubbed her breasts and vagina under her clothing.

2

Another incident occurred during a night around Christmas the same year. O'Brien again asked J.Y. whether she wanted a massage, but J.Y. told O'Brien no because she wanted to go to sleep. O'Brien then explained he needed to practice on someone because he had a test the next day at work. Eventually, J.Y. agreed to a massage. Once again, J.Y. said this took place in the living room when other children in the room were sleeping. Though she could not remember every detail about that night, J.Y. testified that O'Brien again rubbed her breasts and vagina like he had before.

J.Y. also recalled another incident in O'Brien's living room. Like the previous incidents, O'Brien asked J.Y. whether she wanted a massage, and J.Y. said she did. O'Brien began by massaging her head before he eventually pulled off J.Y.'s shirt and began rubbing her breasts. Soon after, O'Brien went under J.Y.'s underwear and rubbed her vagina again. During this incident, J.Y. recalled hearing a sound come from somewhere inside O'Brien's home. When O'Brien heard the sound, he stopped and told J.Y. to put her shirt back on before he left the room. J.Y. said O'Brien had given her other massages as well, but those massages were just head massages that occurred during the day.

When asked whether she told anyone about the massages, J.Y. said she remembered telling O'Brien's oldest son. J.Y. told no one else about the massages because she did not know what O'Brien did was wrong. Again, she estimated she was 9 or 10 years old when the incidents took place. Eventually, J.Y. "came to the conclusion that when you get massages, you don't really get violated like that." After coming to this realization, J.Y. eventually told her mother about what O'Brien did and began seeing a therapist. After telling her mother what happened, J.Y. was interviewed by law enforcement officers and spoke about what happened. The subsequent investigation led to criminal charges against O'Brien.

*One charge leads to several more.*

About a month after O'Brien's arrest in February 2020, the University of Kansas sent a message to students, faculty, and staff telling them of the arrest of a local massage therapist who provided massage therapy services to students at KU. After receiving this message, several student-athletes came forward with allegations about O'Brien, even though the message did not contain O'Brien's name. For about five years, O'Brien worked with the University of Kansas to provide massage services for student-athletes on some of the women's sports teams. In the end, O'Brien was tried for three counts of aggravated indecent liberties with a child for the incidents involving J.Y., and five charges of sexual battery of the student-athletes.

One of those former student-athlete massage clients was H.G. H.G. testified she had started getting massages in high school, but she started receiving them more often when she attended KU. H.G. said she received massages to help increase flexibility and prevent injuries.

H.G. first learned about O'Brien's work from her husband, who had previously had a massage from O'Brien. In total, H.G. got five massages from O'Brien, all between February and March 2016. During the first massage session, H.G. noticed nothing abnormal about the massage and scheduled another session with O'Brien. During the later massages, H.G. recalled O'Brien rubbing his hand against her labia when he applied or removed hot stones. When it first occurred, H.G. said she thought O'Brien had made a mistake. When O'Brien did it again at a later massage, H.G. decided that O'Brien had done so purposely. In all, H.G. recalled two instances of inappropriate conduct by O'Brien and said she never gave O'Brien permission to touch her in this way. After the fifth massage, H.G. found a different massage therapist. H.G. then spoke with a detective who worked for the Lawrence Police Department about what happened.

Another student-athlete, E.R., began getting massages in the fall of 2018. E.R. believed she received three or four massages from O'Brien.

During one session, E.R. recalled having some discomfort in the calf or hamstring area of one of her legs. O'Brien told E.R. to lay on her back, which confused her. O'Brien began by massaging oils into her head. O'Brien then grabbed some hot stones and placed them inside the front of E.R.'s shorts. The hot stone then started sliding to her groin area, and E.R. said that she felt O'Brien's hand touch her vagina. As a result, E.R. said she froze until the massage ended because she did not know what to do. When the session ended, E.R. left the room and told her teammates about what occurred.

E.R. said she did not tell any administrators or law enforcement officers about what occurred because she felt she would be ignored. She knew that other teammates had complained before about O'Brien, and nothing had happened. She also felt the team staff would not be helpful because "the staff rarely even listened to anything we had to say when it came to problems as a team. They usually told us to figure it out ourselves."

Another former student-athlete, A.D., received her first massage from O'Brien in September 2019. A.D. told O'Brien she had some soreness in both her hamstrings, as well as some generalized back pain. O'Brien instructed A.D. to lay on her stomach and placed hot stones around her right and left groin area. O'Brien also wedged another hot stone near her vagina. While still on her stomach, A.D. said O'Brien started to massage the area where the crease of her thigh met her vagina, and O'Brien's hand contacted A.D.'s vagina. O'Brien then instructed A.D. to lay on her back so he could massage a muscle in her armpit area, which he said would relieve some of her back pain. A.D. recalled O'Brien then putting his hand inside her sports bra and touching her nipple with his index and middle fingers. O'Brien then grabbed A.D.'s breast before massaging the area between her breasts.

B.A., another former student-athlete, also testified. Like A.D., B.A. first began getting massages in September 2019. During her first session with O'Brien, B.A. told him she needed him to work on her midback and knee areas. O'Brien began by having her lay on her stomach, and he placed hot stones on her hamstrings, one under her shorts at the bottom of her buttocks, and one through the top of her shorts. O'Brien then started massaging B.A.'s buttocks before moving to the area of B.A.'s sports bra. O'Brien eventually grabbed B.A.'s right breast before placing another hot stone in between her breasts. Later, O'Brien started dragging his fingers down B.A.'s stomach from her sports bra to her pubic bone multiple times. O'Brien then told her to lay on her back, at which point he worked on her quadriceps before he started to massage the area under her shorts where the crease of her thigh met her vagina. After this, O'Brien told B.A. she could leave because her session ended.

*The defendant presented several witnesses.*

O'Brien called several witnesses to testify in his defense. All testified they were former massage clients and O'Brien did nothing inappropriate during their massages.

O'Brien testified. He said he provided new clients with an intake form that included, among other things, a medical waiver section that stated all massage therapy was strictly nonsexual. O'Brien estimated that he retained around 6,000 different intake forms from clients. That said, O'Brien could not recall which student-athletes completed the form. Similarly, O'Brien said J.Y. never completed an intake form because the massages were performed in his living room.

When asked about his massage techniques, O'Brien said he used hot stone therapy. He said he often used the hot stones because he found they reduced discomfort in the muscles, including discomfort in the groin area. No matter if his client was a man or woman, he placed the hot stones in the same place. He said he never intended to use the

6

hot stones in that area so that he could be close to a client's groin, and he denied ever touching a client's groin inappropriately when using the technique. He also specifically denied ever touching J.Y. inappropriately, saying that he only ever massaged her head, neck, and shoulders. Similarly, O'Brien denied ever touching H.G., A.D., E.R., and B.A. inappropriately. O'Brien maintained that "[a]s a professional massage therapist, you would not touch somebody's vagina."

Catherine O'Brien testified. She helped O'Brien manage the massage therapy business. Catherine said she knew about the intake forms her husband had clients complete, but she did not know whether any of the complaining witnesses had completed the form. She also said she never observed any of O'Brien's clients ask for their money back or seem distraught after receiving a massage from O'Brien. Similarly, she never observed any of the student-athletes O'Brien worked with arguing about which massage therapist would treat them.

Both of O'Brien's sons testified. O'Brien's oldest son testified that J.Y. did not spend time alone with their father when she spent the night, but O'Brien's younger son testified that O'Brien had given a massage to J.Y. Even so, both testified that O'Brien never inappropriately touched J.Y.

*O'Brien is convicted and sentenced.*

The jury found O'Brien guilty as charged. The district court imposed concurrent lifetime sentences in prison without the possibility of parole for 25 years for each conviction for aggravated indecent liberties with a child. The court imposed one-year jail sentences for each sexual battery conviction, each sentence to be served consecutively with each other after O'Brien completes his felony sentence.

7

O'Brien, through his counsel, raises several issues in this appeal. First, he contends that the State failed to present sufficient evidence to convict him on the five sexual battery convictions. Second, he argues that the court erred when it did not sever the trial of the three aggravated indecent liberties with a minor felony charges from the trial of the five misdemeanor sexual battery charges. Then, O'Brien raises a legal error, claiming the court should have instructed the jury about consent. He also claims the court abused its discretion when it prohibited him from asking questions about any possible civil lawsuits the alleged victims may be contemplating. O'Brien also claims legal error when the court prevented him from asking a witness about the possible bias of J.Y.'s mother. He argues the court should have given the jury a limiting instruction about its consideration of an out-of-court statement. He also contends the admission of an unredacted photo of a text message was erroneous. O'Brien argues that a prosecutor's comments during closing were prosecutorial error. Finally, O'Brien suggests that cumulative errors require reversal of his convictions.

Without the benefit of his counsel's assistance, O'Brien has filed his own brief raising several more issues. We will address those claims after our analysis of the issues listed above.

*There is sufficient evidence to support the sexual battery convictions.*

O'Brien challenges the sufficiency of the evidence proving the sexual battery charges.

> "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [During our review, we will] not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

The elements listed in K.S.A. 2022 Supp. 21-5505(a) define sexual battery as "the touching of a victim who is 16 or more years of age and who does not consent thereto, with the intent to arouse or satisfy the sexual desires of the offender or another."

The testimony from H.G., E.R., A.D., and B.A. all described similar actions by O'Brien. All of them testified that O'Brien touched their breasts or their vaginas or both during their massages. While no one disputes that O'Brien was massaging the student-athletes when these crimes were committed, the issues are *where* O'Brien touched the women and *why* he did so. Even O'Brien testified that "[a]s a professional massage therapist, you would not touch somebody's vagina."

O'Brien argues that the nature of the touching and the intent to touch must be proved separately. In other words, he argues just because he may have touched their breasts or their vaginas, that does not prove he had an intent to arouse his or the student-athletes' sexual desires.

He cites *State v. Ta*, 296 Kan. 230, 290 P.3d 652 (2012), as support. The court in *Ta* dealt with Ta's touches along with some statements the defendant made about his sexual urges. In *Ta*, the defendant touched a child's face, hair, and chin. The defendant had also "made several statements in which he reiterated that he had strong urges to have sex with small children." 296 Kan. at 233. The question in *Ta* focused on whether the statements about Ta's urges were used to interpret the touching of the child's face, hair, and chin as improper. But our Supreme Court was unconvinced by this attempt to prove improper intent by inferences drawn from a statement of the defendant.

The Supreme Court held that to use a defendant's mental state to define or determine whether a touching is lewd "would allow punishment for impure, criminal thoughts, and it is a fundamental principle that 'the law does not punish criminal

9

thoughts.'" 296 Kan. at 242. The *Ta* court instructed that we are to look at the nature of the touching:

> "[W]hether a touching is lewd should be determined by considering the common meaning of the term 'lewd,' that is whether a touching is 'sexually unchaste or licentious; suggestive of or tending to moral looseness; inciting to sensual desire or imagination; indecent, obscene, or salacious.' In considering if a touching meets this definition, a factfinder should consider whether the touching 'tends to undermine the morals of a child [and] . . . is so clearly offensive as to outrage the moral senses of a reasonable person.' [Citations omitted.]" 296 Kan. at 242-43.

We hold that *Ta* is not controlling precedent here. O'Brien's touching went well beyond the touching of a young girl's face and hair. The touching of breasts and vaginas is explicitly sexual when made during a massage. The jury who saw and heard O'Brien and the student-athletes had the opportunity to decide if O'Brien's touching was proper; the jury decided it was not.

Looking at the evidence in the light most favorable to the State, a rational fact-finder could have found O'Brien guilty of sexual battery. The victims' testimonies demonstrated that O'Brien inappropriately touched them. A reasonable inference from this testimony would be that O'Brien did so with the intent to satisfy his sexual desires, despite his testimony that a professional massage therapist would not touch someone's vagina. The State presented sufficient evidence to find O'Brien guilty of sexual battery.

*The court did not err in denying O'Brien's motion to sever the charges.*

O'Brien argues the district court erred by not severing the trials of the aggravated indecent liberties with a child counts and the sexual battery charges. Before trial, O'Brien asked the district court to sever the charges involving the minor from the charges involving the adults. The court denied O'Brien's motion. On appeal, he argues the many

10

differences between the prosecutions compel separate trials and asks us to reverse and remand for new separate trials. He points to the different ages of the victims: a nine-year-old girl and college-age student-athletes. He contends that the difference between the possible penalties—three off-grid felony crimes and class A misdemeanors for the sexual battery counts—shows the charges should be tried separately. And the differences in the times and locations of where the crimes were allegedly committed—his home and on the KU campus—also made joinder of the counts improper.

This question is controlled by the application of K.S.A. 22-3202(1):

"Two or more crimes may be charged against a defendant in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

When the district court decided this issue, it concluded the aggravated indecent liberties with a child and sexual battery charges were properly joined because they had a similar character and arose out of a common or similar scheme. The court pointed out that the victims "all described very similar touchings, where they were touched, how they were touched." In the accounts the victims gave during their testimonies, they said O'Brien would begin a massage normally before later touching them inappropriately during the same massage. O'Brien's methods were nearly identical in each instance. The court thus found that all of the crimes involved inappropriate touching of victims, and each time O'Brien committed the alleged offenses, he did so under the ruse of giving a massage. This conclusion is supported by substantial competent evidence.

We find no flaw in the court's reasoning. It is true that the ages of the victims were different, but O'Brien's conduct each time remained the same. He touched each victim inappropriately during a massage. Both aggravated indecent liberties with a child and

11

sexual battery criminalize this type of touching. See K.S.A. 2022 Supp. 21-5505(a); K.S.A. 2022 Supp. 21-5506(b)(3)(A).

It is the age of the victim and the offender that causes the disparity in the level of punishment here, not the conduct of the offender. O'Brien's aggravated indecent liberties with a child conviction was an off-grid felony because J.Y. was 9 or 10 years old when the crimes occurred, and O'Brien was older than 18 years old. See K.S.A. 2022 Supp. 21-5506(c)(3).

O'Brien's last point about different locations is also unconvincing. Even though the time and physical location of each crime differed, it occurs to us O'Brien committed the crimes when he had the opportunity to perform massages on the victims. He seized the opportunity when it arose. We do not see this as a valid reason to separate the trial of these charges.

O'Brien has failed to persuade us that the court abused its discretion on this point.

*There was no need for the court to instruct the jury on consent.*

O'Brien next argues that the district court committed clear error by not instructing the jury about the law of withdrawn consent. Because O'Brien did not ask the court to give such an instruction, he must now show clear error in order to obtain relief on this point. See K.S.A. 2022 Supp. 22-3414(3).

When reviewing whether the failure to give a jury instruction was clearly erroneous, we must decide whether the instruction was legally or factually appropriate, using an unlimited standard of review. *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021). In deciding whether an instruction was factually appropriate, we must determine whether there was sufficient evidence, viewed in the light most favorable to the

defendant, that would have supported the instruction. *State v. Holley*, 313 Kan. 249, 255, 485 P.3d 614 (2021).

This issue arose from rape cases where consent was withdrawn. O'Brien relies on *State v. Flynn*, 299 Kan. 1052, 329 P.3d 429 (2014). In *Flynn*, a jury found Flynn guilty of rape but acquitted him of five other charges. A panel of this court later reversed Flynn's rape conviction, finding the district court committed clear error when it failed to instruct the jury on withdrawn consent in accordance with a prior case, *State v. Bunyard*, 281 Kan 392, 133 P. 3d 14 (2006). In *Bunyard,* the court had ruled that a defendant is allowed a reasonable time to discontinue sexual intercourse when consent is withdrawn and that withdrawn consent is communicated to the defendant. 281 Kan. at 416.

In the Supreme Court's review of *Flynn*, the court reversed Flynn's rape conviction because the trial court committed clear error by not instructing the jury about the law of withdrawn consent. 299 Kan. at 1069. And the court specifically disapproved the "'reasonable time'" language from *Bunyard*, finding such language "contrary to the plain language of the rape statute." *Flynn*, 299 Kan. at 1066-67.

But the *Flynn* court reaffirmed the conclusion from *Bunyard* that the jury must be told that consent for intercourse may be given and then withdrawn but must be communicated to the defendant:

> "[W]hen evidence is presented involving post-penetration withdrawal of consent, the trial court must do more than simply instruct the jury on the statutory elements of rape. Instead, in such cases, in addition to the rape elements instruction, the trial court must instruct the jury that rape may occur even though consent was given to the initial penetration, but only if the consent is withdrawn, that withdrawal is communicated to the defendant, and the sexual intercourse continues when the victim is overcome by force or fear." *Flynn*, 299 Kan. at 1067.

We note that in *Flynn* and *Bunyard*, consent for intercourse was initially given and then withdrawn.

The problem we have with O'Brien's argument is that this is not a rape case in which consensual sexual intercourse started and then consent had been withdrawn. These are massage cases that turned into illicit touching. Because consent for sexual touching was never given, consent could not be withdrawn. It is true that the victims consented to receiving a massage, but it is also true that none of them consented to O'Brien touching their breasts or vaginas. O'Brien recognized that such touching was not appropriate for a massage therapist.

We find more appropriate the reasoning in *State v. Parker*, 48 Kan. App. 2d 68, 282 P.3d 643 (2012), where Parker pretended to be a therapist in a hospital. He was convicted of several sex crimes including aggravated sexual battery. On appeal, Parker claimed the victim "consented to be treated by hospital staff and that she believed that he was a therapist," which meant she consented to Parker's inappropriate touching. 48 Kan. App. 2d at 80.

The panel rejected this reasoning, stating that the victim might have consented to therapeutic rubbing of her leg—had Parker been a therapist—but "[t]here was no evidence that [the victim] consented to anyone rubbing her leg to satisfy that person's sexual desires, which is what the jury found Parker did here. The jury could reasonably find that [the victim] didn't consent to any of Parker's actions." 48 Kan. App. 2d at 80.

Even looking at the evidence in a light most favorable to O'Brien as required by *Holley*, under these facts an instruction on consent was factually inappropriate. No dispute surrounded the consent the victims gave concerning receiving a massage. The dispute centered on O'Brien inappropriately touching the victims during a massage, which he acknowledged would not be appropriate for a massage therapist to do. That is a

14

far different situation than a couple beginning sexual intercourse and then one of the pair attempting to withdraw consent. There is simply no evidence that the student-athletes consented to any sexual touching. After all, there is a great difference between touching that seeks to ignite passion and touching that relieves soreness in ligaments and muscles. And the jury found O'Brien guilty of multiple counts of sexual battery. This suggests that the jury found O'Brien guilty of touching his victims inappropriately with the intent to arouse himself. See K.S.A. 2022 Supp. 21-5505(a).

The district court did not err in failing to give an instruction on consent.

*The district court precluded defense counsel from presenting evidence bearing on the credibility of two of O'Brien's accusers.*

During the cross-examination of E.R. and A.D., O'Brien's defense counsel sought to introduce evidence of a possible financial motive behind the witnesses' accusations of sexual battery. In cross-examination of E.R., after establishing she did not report the incident right away, defense counsel asked E.R. whether she was "contemplating filing a lawsuit about this incident." The trial court sustained the State's objection on the ground of relevance.

A.D. was the next witness, and when defense counsel asked "did you also contact [an attorney] about this," the State objected: "Your Honor, this is just going down the same irrelevant path regarding a potential civil suit that has nothing to do with these proceedings in terms of whether these incidents happened with these women or not." Defense counsel responded, "Well, Your Honor, it is. The fact of the matter is [the prosecutor] also asked who all she contacted; and second, I believe the fact that there are—they are pursuing civil claims and may receive damages is relevant to their motivation for bringing this all up." The court ruled, "I will sustain the objection. I do not believe it's relevant."

After the State rested, the parties met before the defense presented its case. During the conference, some mention was made of an out-of-state witness that was going to testify for the defense. Defense counsel advised:

"During the course of this representation, I got an e-mail from an attorney asking if Mr. O'Brien had liability insurance, which has promoted the questions that I have indicated, and I have subpoenaed her, and she is supposed to be here Thursday and she is coming from Kansas City, Missouri. I guess I—I am proffering that the only function of her testimony was to testify that I got an e-mail asking if there was liability insurance. If you are going to rule that that is irrelevant, I would prefer to let her know in advance not to make the trip."

The trial court responded that "[i]t's irrelevant. I think it's—it's the same relevance as a car wreck case where we don't let juries know who has insurance and how much and what the parameters are. Insurance is not related to this case." Defense counsel responded, "Again, it's not whether he has insurance, but whether or not they were contemplating filing a lawsuit." But, ultimately, the judge responded:

"That is true, but people can still contemplate filing lawsuits. I just am not aware of any situation where in a criminal trial that has been brought forward as evidence for the jury to consider that a lawsuit may or may not be filed. I can tell you in the last case that I tried last week that in the jury room, the jury said to me, Are they going to file a civil lawsuit? So that will—I am sure that will be something that is already in their mind without us dirtying up the record with inadmissible evidence."

We review the trial court's decision to limit cross-examination for an abuse of discretion. "A district court abuses its discretion when (1) no reasonable person would have taken the view adopted by the district court; (2) the judicial action is based on an error of law; or (3) the judicial action is based on an error of fact." *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018). As explained below, when the district court

16

determined that evidence of a witness' motivation for testifying was irrelevant, its decision to limit cross-examination was based on an error of law.

*O'Brien was denied the right to present relevant evidence to the jury.*

All persons accused of crimes have the right to confront the witnesses against them at trial. U.S. Const. amend. VI; Kan. Const. Bill of Rights, § 10. O'Brien, too, had this trial right to confront witnesses, and one important component in confrontation is the right to expose a witness' motivation in testifying. *Davis v. Alaska*, 415 U.S. 308, 316-17, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) ("We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."). "'The primary purpose of the Sixth Amendment Confrontation Clause is to give the accused the opportunity for cross-examination to attack the credibility of the State's witnesses.'" *Thomas*, 307 Kan. at 738 (quoting *State v. Friday*, 297 Kan. 1023, Syl. ¶ 1, 306 P.3d 265 [2013]). Cross-examination has long been recognized as "the principal means by which the believability of a witness and the truth of his [or her] testimony are tested." *Davis*, 415 U.S. at 316.

To prove a constitutional violation based on the denial of the right to confront adverse witnesses, a criminal defendant must show that the trial court prohibited them from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness. Such a confrontation would have exposed the jury to facts from which it could appropriately draw inferences relating to the reliability of the witness. See *State v. Frantz*, 316 Kan. 708, 721, 521 P.3d 1113 (2022).

> "'Because a district court may exercise reasonable control over the scope of cross-examination, appellate courts review the court's decision to limit cross-examination for an abuse of discretion.' And to the extent this issue also involves the district court's

17

decision to limit cross-examination based on evidentiary rulings, those rulings are also reviewed for an abuse of discretion. [Citations omitted.]" 316 Kan. at 721.

In O'Brien's case, the jury was instructed that each crime was a separate and distinct offense to be decided separately and uninfluenced by its decision on any other charge. In the charges against O'Brien for sexual battery of E.R. and A.D., they were each the sole victim and sole prosecution witness supporting their respective cases. There was no corroborating physical or forensic evidence nor any third-party eyewitness testimony supporting either victim's allegations. To be sure, such additional evidence is not required, when, as here, the jury finds a victim's testimony to be credible and believable. But the credibility of the victims' testimony was critical and all-important because there was no other evidence to corroborate that testimony. O'Brien had the proper and important right to cross-examine E.R. and A.D. about their motivation in testifying. See *Davis*, 415 U.S. at 316-17. Exposing the accusers' motivation in testifying could discredit the substance or weight of the testimony in the eyes of the jury. Given the particular facts of the two sexual battery offenses involving E.R. and A.D.—in which there is only one witness—the credibility of that witness is an absolutely critical component of the State's case and the defendant's defense.

As a general rule, all relevant evidence is admissible. K.S.A. 60-407(f). And K.S.A. 60-420 broadly permits a party to present evidence to impair the credibility of a witness. The State cites no rule of evidence or caselaw precluding the admission of evidence that a witness intends to file a civil claim over the subject matter of his or her testimony. The State simply continues to argue that evidence of a possible financial motive by E.R. or A.D. is not relevant. But relevant evidence is "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). A witness' or victim's credibility is material if it has a legitimate and effective bearing on the jury's determination of the guilt or innocence of the defendant. *State v. Stafford*, 296 Kan. 25, 43, 290 P.3d 562 (2012). Because of the unique circumstances in this case—where

18

O'Brien's guilt is based solely on a single witness' testimonial reliability—the relevance of evidence bearing on the credibility of the witness is unquestionably material. The victims' testimony was the only evidence presented at trial in support of the sexual battery charges, necessarily making credibility relevant.

As the State acknowledges, our Supreme Court has recognized that "an ongoing civil lawsuit" involving a defendant and affecting the financial interest of a State's witness is relevant impeachment evidence that may be explored on cross-examination during the criminal trial. *Thomas*, 307 Kan at 739-40. But here, the State argues, there is no evidence of an existing civil action, and O'Brien does not contend there is any case that has been filed (or settled) regarding the sexual batteries. Here, the question put to the witnesses was whether they were contemplating such a lawsuit. We find no Kansas case specifically addressing impeachment of a witness who is contemplating filing a civil claim for damages against a defendant, and we suspect such information would rarely be known to defense counsel. Nonetheless, whether a claim is contemplated or has been filed, the witness' motivation for testifying remains a relevant inquiry.

We find that *State v. Ferguson*, 5 Ohio St. 3d 160, 450 N.E.2d 265 (1983), presents a reasoned analysis of the issue. In *Ferguson*, the prosecution objected to cross-examination of the victim about her knowledge of a certain law firm. In response, defense counsel "then proffered, in effect, that the victim was contemplating a civil action against [defendant's] former employer as a result of the incident between the victim and [defendant]." 5 Ohio St. 3d at 165. The *Ferguson* court held that an "accused is permitted to cross-examine the prosecuting witness as to the witness' pending or contemplated civil action against the accused, in order to demonstrate any possible bias or prejudice arising out of the witness' financial interest in the outcome of the prosecution." 5 Ohio St. 3d at 167; see also *State v. Arlington*, 265 Mont. 127, 141-42, 875 P.2d 307 (1994) (adopting the prevailing view from *Ferguson* finding a witness' contemplated civil suit is relevant to

19

show motive and bias but district court error excluding such testimony was harmless under the facts of the case).

Here, defense counsel had information (the e-mail from an attorney) from which counsel could infer the witnesses had contacted an attorney about filing a civil suit. Thus, counsel had a good faith basis for questioning E.R. and A.D. about their intentions. That defense counsel may not have known the answer to the question does not undercut its relevance. The only people who, without speculating, could answer a question about the possible financial motive were E.R., A.D., and the attorney. Yet, the district court would not permit any of the witnesses with knowledge to answer the question, and in so doing, deprived the jury of relevant information and deprived O'Brien of his constitutional right to cross-examine his accusers.

The scope and subject matter of cross-examination are limited to responsive questions based on direct examination and questions relating to possible biases and motivation for testifying. *State v. Jacques*, 270 Kan. 173, 182, 14 P.3d 409 (2000), *abrogated on other grounds by State v. Milo*, 315 Kan. 434, 510 P.3d 1 (2022). The cross-examination by O'Brien's counsel was both responsive to the State's inquiry about individuals to whom the victims had spoken to about the incident, and it was related to the witnesses' motivation for testifying. Our United States Supreme Court has stated that "'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Frantz*, 316 Kan. at 720 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 [1986]). But none of the limitations on cross-examination mentioned in *Frantz* apply here. Nonetheless, even when the denial of a party's inquiry into a witness' possible bias or motivation for testifying is error, as we find here, "the error may be harmless and does not automatically require reversal." *Jacques*, 270 Kan. at 182.

*The district court error is not harmless.*

We turn now to the question of harmless error. An error is harmless when the benefitting party demonstrates beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record. See *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 [1967]). This court considers several factors when assessing whether a trial court's error in refusing to allow cross-examination about possible bias or motivation was harmless, including:

> "(1) [T]he importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of the cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case." *Jacques*, 270 Kan. 173, Syl. ¶ 3.

Applying those factors here, (1) E.R. and A.D. were the sole witnesses testifying about the incidents, so their testimony was critically important; (2) their testimony was not cumulative; (3) there was an absence of corroborating evidence and O'Brien's testimony was contrary to that of the victims; (4) the trial court did not otherwise limit cross-examination; (5) the strength of the State's case corresponds to the strength of the witnesses' credibility—the outcome of the charges involving E.R. and A.D. rises and falls on the credibility of the victims' testimony.

In sum, in reviewing the entire record, we find that the factors do not support a conclusion that the district court's restriction on cross-examination was harmless. "The reliability of a witness is an essential jury consideration, one upon which guilt or innocence may ultimately rest." *State v. Sean*, 306 Kan. 963, 991, 399 P.3d 168 (2017).

21

O'Brien is permitted to present, and the jury is entitled to consider, evidence relating to a witness' credibility in reaching its verdict. In the sexual battery charges involving E.R. and A.D., given the particular facts here, we are unable to conclude beyond a reasonable doubt that the district court's error in precluding cross-examination regarding E.R. and A.D.'s motives will not or did not affect the outcome of the trial. Thus, we reverse on those convictions and remand for a new trial.

*We find no error in the district court limiting the examination of a witness about O'Brien's relationship with J.Y.'s mother.*

O'Brien contends the district court erred when it did not allow defense counsel to question a defense witness, Matt Freed, about the relationship between O'Brien and J.Y.'s mother. He argues that this information would have explained why J.Y. made up these allegations against him.

During the trial, defense counsel asked Freed whether he knew J.Y.'s mother. Defense counsel also asked Freed whether he knew what J.Y.'s mother's attitude was toward O'Brien.

At a bench conference outside the hearing of the jury, the State objected on relevancy grounds. The defense counsel proffered to the court that there was some tension between J.Y.'s mother and O'Brien. And that may have been motivation for her to pressure J.Y. into making statements and accusations against O'Brien. The district court sustained the objection, finding such a line of questioning irrelevant because there had been no testimony that J.Y. had told her mother about what happened or that her mother had told any law enforcement officials about what occurred. It was the court's understanding that a mandated reporter had brought these allegations to the authorities' attention.

22

When a criminal defendant claims that a district court interfered with his or her constitutional right to present a defense, we review the issue de novo. But "[a] defendant's right to present evidence in support of a defense is subject to certain restraints: the evidence must be relevant, and evidentiary rules governing admission and exclusion of evidence" will be applied. *State v. Seacat*, 303 Kan. 622, 638-39, 366 P.3d 208 (2016).

We question the significance of this issue. The record shows that J.Y.'s mother did not testify for the State, nor was she called by the defense. Nothing in the record suggests that J.Y.'s mother made J.Y. report the allegations against O'Brien. At most, J.Y. testified that her mother was very angry with O'Brien after J.Y. told her what happened. But this is not an indication J.Y.'s mother made J.Y. report O'Brien to law enforcement. This seems to be a natural reaction any parent would have if the parent's child said he or she had been sexually assaulted by a family friend.

J.Y. reported the allegations against O'Brien to her therapist. And when law enforcement officers originally sought to interview J.Y. about what happened, J.Y.'s mother told the officers that they were apprehensive about continuing the process. "They said that it was very belated and that they no longer had any contact or connection with [O'Brien], and [J.Y.] was really nervous about participating in the investigation."

We find no error in the district court sustaining the State's relevancy objection to this line of testimony from Freed.

*Failing to give a limiting instruction about an email exhibit was not clear error.*

O'Brien's next argument concerns the district court's failure to give a limiting instruction for an exhibit the State admitted during trial. State's exhibit 1 is a copy of the email KU sent to students, faculty, and administrators in March 2020. When the State

23

moved to admit this exhibit, the district court stated it would admit it solely to demonstrate the email had been received, not for the truth of any statements made in the email. O'Brien requested no limiting instruction, and none was given. Thus, we review for clear error. See K.S.A. 2022 Supp. 22-3414(3).

We are dealing with hearsay. Under K.S.A. 2022 Supp. 60-460, hearsay is defined as "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." Additionally, K.S.A. 60-406 states: "When relevant evidence is admissible as to one party or for one purpose and is inadmissible as to other parties or for another purpose, the judge *upon request* shall restrict the evidence to its proper scope and instruct the jury accordingly." (Emphasis added.) No request was made here, but the court did limit the application of the exhibit when it was admitted.

Was this failure to give a limiting instruction clearly erroneous? In other words, would the jury's verdict be different had a limiting instruction been given?

The email was vaguely written and did not contain O'Brien's name. It simply explained that a local massage therapist, who had been an independent contractor with KU, had recently been arrested for aggravated indecent liberties with a child, and KU had begun investigating the massage therapist's interactions with student-athletes. All those statements were known to the jury based on the testimony of the witnesses from the case. We fail to see how a limiting instruction would have changed the verdict.

This is not clear error.

*Did the district court err in admitting unredacted copies of text messages?*

O'Brien's next argument concerns photographs of text messages the district court

24

admitted during trial. He contends the messages contained inadmissible hearsay statements, which the jury was allowed to consider because the photographs were not redacted. O'Brien focuses on the admission of State's exhibits 5, 6, 7, and 8. Those exhibits contained photographs of text messages between B.A. and two other student-athletes who were not part of the case.

When the State sought to admit these exhibits, O'Brien objected. In referring to exhibits 5 and 6, the district court overruled O'Brien's objection because it deemed the statements from the out-of-court individuals inconsequential. The court also noted that it would make clear to the jury it should only consider the statements made by B.A. Similarly, the district court overruled O'Brien's objection to exhibits 7 and 8 because the statements were inconsequential and contained limited factual statements. And again, the district court said it would instruct the jury only to consider the statements made by B.A.

A similar situation arose in *State v. Williams*, No. 114,310, 2017 WL 2833449 (Kan. App. 2017) (unpublished opinion). In *Williams*, the district court admitted email conversations between Williams and an unknown third party—named Ray—over Williams' hearsay objection. The district court "ruled that the email conversations did not constitute hearsay because they were not offered to prove the truth of statements made by the party with whom Williams was communicating; rather, the statements merely placed Williams' own statements in the emails in proper context." 2017 WL 2833449, at *4.

On appeal, Williams argued the district court erred in admitting the email conversations. Another panel of this court disagreed, finding that the emails did not constitute hearsay. 2017 WL 2833449, at *4-5. In so finding, the panel stated: "'"If an utterance previously made out of court is offered in evidence merely for establishing what was then said [in response], and not for establishing the truth of the statement, the testimony is not hearsay.'" 250 Kan. at 567." 2017 WL 2833449, at *5.

The panel clarified that "[t]he truth that the State contended was to be found in the exchange was not Ray's remarks but Williams' statements in response; and Williams' statements in response evidenced a transaction in which Williams provided passwords that gave Ray access to photos of Williams' stepdaughter." 2017 WL 2833449, at *5.

Like *Williams*, the State's use of the text message conversations here were not admitted for the truth of the non-witnesses' statements. Instead, the exhibits were admitted so the jury could consider the statements made by B.A. Without allowing the jury to see the messages from the non-witnesses, B.A.'s responses would have made little sense. Because the photographs of the conversations were unredacted, the jury could place B.A.'s statements in the proper context so it could consider what she said.

Because the court limited the admission of these photos to B.A.'s statements, we find no error in admitting the unredacted photographs.

*We find no prosecutorial error in the closing remarks of the prosecutor.*

O'Brien contends two statements made by the State's attorney during closing arguments were prosecutorial error and they deprived him of a fair trial. In the first statement, the prosecutor said, "I have never been sexually assaulted by Mr. Shawn O'Brien. I am surprised I wasn't called to testify in this case." In the second statement, the prosecutor remarked that "[t]he Crimson and Blue certainly was not watching out for these girls." O'Brien did not object to the State's closing argument during trial, but we will review a prosecutorial error claim even if there is no trial objection. See *State v. Butler*, 307 Kan. 831, 864, 416 P.3d 116 (2018).

Trial advocacy is a skilled profession.

"A prosecutor has wide latitude in crafting arguments and drawing 'reasonable inferences from the evidence but may not comment on facts outside the evidence.' Any argument 'must accurately reflect the evidence, accurately state the law, and cannot be "intended to inflame the passions or prejudices of the jury or to divert the jury from its duty to decide the case based on the evidence and the controlling law."' [Citations omitted.]" *State v. Longoria*, 301 Kan. 489, 524, 343 P.3d 1128 (2015).

We will always consider the context of any challenged statements. See *State v. Anderson*, 308 Kan. 1251, 1261, 427 P.3d 847 (2018).

To determine whether prosecutorial error has occurred, we must decide whether these comments "fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). If we find error, we will then "determine whether that error prejudiced the defendant's due process rights to a fair trial." 305 Kan. at 109. In evaluating prejudice, we will hold the "prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record.'" 305 Kan. at 109. In other words, when "'there is no reasonable possibility that the error contributed to the verdict,'" the error is harmless. 305 Kan. at 109.

*The first statement*

With context, the prosecutor said in the first statement:

"I will respond to a couple things that [defense counsel] just spoke about. With respect to things that make sense and things that don't. How do you feel about Shawn O'Brien's adult male friend[s] coming in and testifying that they were never sexually assaulted by

27

him? I have never been sexually assaulted by Mr. Shawn O'Brien. I am surprised I wasn't called to testify in this case."

The prosecutor made this statement following defense counsel's closing arguments. In that argument, defense counsel spoke about many things, including the success of O'Brien's massage therapy business. Defense counsel argued that O'Brien could not have created a successful massage business if people were routinely accusing him of doing inappropriate things. Defense counsel's closing statement also coincides with O'Brien's apparent strategy during trial when he called several clients to testify that they had never been assaulted by O'Brien.

The prosecutor's sarcastic remark in response to O'Brien's trial strategy, as well as defense counsel's arguments during closing statements, is unskilled advocacy, inappropriate for a serious prosecution, and unhelpful to the jury. Our Supreme Court has cautioned that prosecutors should avoid repeated use of sarcasm "[b]ecause the line between appropriate and inappropriate use of sarcasm is thin, making it easy to cross." *Longoria*, 301 Kan. at 526.

Even so, our Supreme Court has also stated that sarcasm is not inappropriate per se. In other words, sarcastic remarks will not automatically be ruled as prosecutorial error. Instead, sarcasm "should be thoughtfully tailored to specific arguments and evidence." 301 Kan. at 526. The court has also stated that "[p]rosecutors may point out inconsistencies in a defendant's statements and argue the evidence reflecting poorly on the defendant's credibility. But in doing so, they may not accuse a defendant of lying." *State v. Liles*, 313 Kan. 772, 776, 490 P.3d 1206 (2021).

Here, the prosecutor did not accuse O'Brien of lying. Instead, the prosecutor's remark was a roundabout way of arguing the evidence reflected poorly on O'Brien's defense. From our reading of the record, it seems the prosecutor's remark was intended to

28

convey to the jury that having several male clients testify they had never been assaulted by O'Brien missed the thrust of the prosecution. The State never alleged he had assaulted a male client. All of his victims were female. The comment was poor advocacy, but it did not constitute prosecutorial error.

*The second statement*

The prosecutor also remarked that the "Crimson and Blue certainly was not watching out for these girls." This statement refers to how the KU Athletics Department dealt with reports from the student-athletes regarding O'Brien.

O'Brien now argues that this constitutes prosecutorial error because the case was not about how the KU athletic department responded or didn't respond to complaints from some of its student-athletes. It was about whether the State proved its charges against O'Brien beyond a reasonable doubt.

Context controls our view of this statement. To us, the prosecutor's statement amounts to a commentary on the evidence presented during trial. A.D. and B.A. both testified they reported O'Brien's conduct to their team trainer. A.D. also said that after making her report, the trainer dismissed her claims and told her not to worry about what happened. Because of the trainer's inaction, A.D. endured another massage from O'Brien. B.A. also said that before O'Brien inappropriately touched her, she had previously reported his conduct to the trainer on behalf of another teammate. And E.R. testified that she did not report O'Brien's conduct to the trainer because she knew other teammates had complained and nothing changed.

O'Brien's argument ignores how the inaction of the KU staff played into the rest of the case. Defense counsel asked the student-athletes on cross-examination why they had not reported O'Brien's conduct sooner. They all responded by saying they told their

29

trainer about what happened and were largely ignored. But as A.D. explained, KU eventually investigated these claims following the March 2020 email.

In view of these facts, the statement amounted to a commentary on the facts adduced at trial and is not prosecutorial error.

*Cumulative error did not deprive O'Brien of a fair trial.*

For his final argument, O'Brien contends cumulative error deprived him of a fair trial. We have found but one error, and it affects only the two counts involving E.R. and A.D. As to the remaining three charges, we find no error and determine the cumulative error doctrine simply does not apply to those counts. See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021).

*None of the arguments raised in O'Brien's pro se brief compel relief.*

Many issues raised in O'Brien's pro se brief mirror the issues raised in his appellate counsel's brief. They include the sufficiency of the evidence, prosecutorial error of statements made during closing arguments, improper comments on credibility, and the district court's failure to instruct on certain defenses. We have already dealt with those issues, and we need not repeat our holdings.

O'Brien also raises other issues. One concerns the district court's failure to give an instruction on immunity. This claim can be rejected immediately because O'Brien does not qualify for immunity under K.S.A. 2022 Supp. 21-5231. None of O'Brien's actions involved use of force in self-defense, to defend his home, to defend his place of business, to defend an occupied vehicle against unlawful entry or attack, or to defend his property.

O'Brien argues his defense counsel provided ineffective assistance of counsel for failing to call the trainer many of the student-athletes spoke with. We decline to reach the issue because claims of ineffective assistance are not generally considered for the first time on direct appeal. *State v. Levy*, 292 Kan. 379, 388, 253 P.3d 341 (2011).

Next, O'Brien claims the massage techniques he used are standardized and effective and the victims in the case misinterpreted his innocent actions. We see no grounds for relief here. The jury heard testimony from many individuals, including O'Brien. During O'Brien's testimony, he explained the technique he used when massaging clients. The jury rejected his version of the facts, as well as his explanations for what occurred, and convicted him as charged.

O'Brien also claims he had issues with discovery. He fails to substantiate his claim with relevant support, and includes no citations to the record. We find the issue waived or abandoned. See *State v. Gallegos*, 313 Kan. at 277 (issues not adequately briefed are considered waived or abandoned).

Finally, O'Brien claims he received an unconstitutional sentence. Again, with no relevant support, his claim fails. We hold he has waived or abandoned the issue. See *Gallegos*, 313 Kan. at 277.

This trial came down to which version of the events the jury believed. The State maintained that O'Brien, using the ruse of giving a massage, used each opportunity for illicit touching. O'Brien maintained that he only performed professional, proper massages. With the exception of our reversal involving the sexual battery claims by E.R. and A.D., O'Brien's claims of error fail and we affirm his convictions and sentences for three counts of aggravated indecent liberties and three counts of sexual battery.

Affirmed in part, reversed in part, and remanded for further proceedings.

HILL, J., dissenting:  I agree with all the holdings of the majority in this case except for their opinion that we should reverse and remand the convictions for two counts of sexual battery.

I would affirm those convictions. My friends see something substantial where there is actually nothing but speculation and even that was not prejudicial to the accused.

During the cross-examination of E.R. and A.D., defense counsel asked the two student-athletes about a possible lawsuit. Before they could answer, the prosecutor objected on the grounds of relevance. Each time the court sustained the objections. On the second objection, defense counsel commented, "The fact of the matter is [the prosecutor] also asked who all she contacted; and second, I believe the fact that there are—they are pursuing civil claims and may receive damages is relevant to their motivation for bringing this all up." In sustaining the objection, the judge agreed with the prosecutor, stating she did "not believe it's relevant."

After the State rested, the parties met before the defense's case-in-chief. During the conference, some mention was made of an out-of-state witness who was to testify for the defense. Defense counsel stated that,

> "During the course of this representation, I got an e-mail from an attorney asking if Mr. O'Brien had liability insurance, which has promoted the questions that I have indicated, and I have subpoenaed her, and she is supposed to be here Thursday and she is coming from Kansas City, Missouri. I guess I—I am proffering that the only function of her testimony was to testify that I got an e-mail asking if there was liability insurance. If you are going to rule that that is irrelevant, I would prefer to let her know in advance not to make the trip."

The trial court responded that "[i]t's irrelevant. I think it's . . . the same relevance as a car wreck case where we don't let juries know who has insurance and how much and what the parameters are. Insurance is not related to this case." Attempting to persuade the judge, defense counsel argued, "Again, it's not whether he has insurance, but whether or not they were contemplating filing a lawsuit." But ultimately, the judge responded,

"That is true, but people can still contemplate filing lawsuits. I just am not aware of any situation where in a criminal trial that has been brought forward as evidence for the jury to consider that a lawsuit may or may not be filed. I can tell you in the last case that I tried last week that in the jury room, the jury said to me, Are they going to file a civil lawsuit? So that will—I am sure that will be something that is already in their mind without us dirtying up the record with inadmissible evidence."

We note that this proffer presented the court with nothing substantive—just "an attorney from Kansas City." There is no evidence that a lawsuit had been filed or even would be filed. There is only defense counsel's supposition that the victims were maybe contemplating a lawsuit. With this scant information, any fact-finder, judge, or jury was invited to speculate about this subject. It does not amount to evidence of motivation.

Kansas cases ruling on this subject fall into two general categories. The first are cases when there is a pending lawsuit at the time of the criminal trial. See *State v. Rowland*, 172 Kan. 224, 229, 239 P.2d 949 (1952); *State v. Thummel*, No. 119,331, 2020 WL 741689, *5-8 (Kan. App. 2020) (unpublished opinion). The second category contains cases that have been settled before the criminal trial. See *Thomas*, 307 Kan. at 740. This case belongs into neither category because there is no evidence in the record to support the existence of any lawsuit or settlement nor any intent to file a civil suit. This brings us to our fundamental concern on this issue.

*Was O'Brien denied the right to present important information to the jury?*

During their trials, all accused of crimes have the right to confront the witnesses against them. U.S. Const. amend. VI; Kan. Const. Bill of Rights, § 10. One important topic in confrontation is the right to expose a witness' motivation in testifying. See *Delaware v. Fensterer*, 474 U.S. 15, 19-20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985). O'Brien had this trial right. But there are recognized limits to cross-examination that come into play that we must explore.

Prior cases teach us that several important legal concerns must be balanced when resolving these questions. The permissible bounds of cross-examination are limited by the rules of evidence and judicial discretion. See *State v. Rinck*, 256 Kan. 848, 854, 888 P.2d 845 (1995); *State v. Washington*, 275 Kan. 644, 674, 68 P.3d 134 (2003). The limitations on cross-examination are based on a court's reasonable interpretation and application of the Kansas rules of evidence. Those rules ensure the fairness, reliability, and efficiency of trials. *State v. Frantz*, 316 Kan. 708, 720-21, 521 P.3d 1113 (2022); see *Chambers*, 410 U.S. at 302; *State v. Humphrey*, 217 Kan. 352, 363-64, 537 P.2d 155 (1975). In the absence of clear abuse and prejudicial error, the trial court's decision will stand. *State v. Vargas*, 260 Kan. 791, 798, 926 P.2d 223 (1996). That should occur here.

The scope and subject matter of cross-examination are limited to responsive questions based on direct examination and questions relating to possible biases and motivation for testifying. *State v. Jacques*, 270 Kan. 173, 181-82, 14 P.3d 409 (2000), *abrogated on other grounds by State v. Milo*, 315 Kan. 434, 510 P.3d 1 (2022). At times the denial of a party's inquiry into a witness' possible bias or motivation for testifying is error, but "the error may be harmless and does not automatically require reversal." *Jacques*, 270 Kan. at 182.

This subject of limiting cross-examination, as many subjects in the law are, is measured for reasonableness. Our United States Supreme Court has stated that trial judges "'retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Frantz*, 316 Kan. at 720 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79, 106 S. Ct. 1431, 89 L. Ed. 2d 674 [1986]). A criminal defendant is guaranteed an *opportunity* for effective cross-examination. This is not a guarantee that the cross-examination is effective in whatever way and to whatever extent the defense might wish. See *Frantz*, 316 Kan. at 720. O'Brien exercised his right to cross-examine.

To prove a constitutional violation based on the denial of the right to confront adverse witnesses, a criminal defendant must show that the trial court prohibited them from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness. Such a confrontation exposes the jury to the facts from which jurors could appropriately draw inferences relating to the reliability of the witness. See *Frantz*, 316 Kan. at 720-21. Here is where O'Brien's argument to reverse fails. O'Brien has shown no prejudice to his defense because the trial court sustained the objection to this question.

The question we must answer, then, is whether a defendant presented sufficient information for the jury to make a discriminating appraisal of the witness' motives and bias. *United States v. Mullins*, 613 F.3d 1273, 1283 (10th Cir. 2010); see also *Van Arsdall*, 475 U.S. at 680 (limits on cross-examination violate Confrontation Clause where they prevent defendant from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias of the witness). In other words, the court must determine

35

"whether a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination." *United States v. Garcia*, 13 F.3d 1464, 1469 (11th Cir. 1994) (citing *Van Arsdall*, 475 U.S. at 680).

In this prosecution, we must ask if O'Brien's questions could lead to evidence that would give the jury a significantly different impression of the two student-athletes' credibility? I conclude there is none. This line of inquiry is simply an invitation to speculate. Who was the target of this possible lawsuit: O'Brien, the University, or the coaches to whom complained?

Here, the exclusion of the testimony on cross-examination was reasonable. The overwhelming evidence relating to the methods O'Brien used to exploit his victims while placed at the mercy of his massages would not be undercut by a possible motivation to testify based on two victims' contemplation of a civil lawsuit. The jury would likely not find credibility issues with the victim witnesses based on this motivation. Further, the outcome would likely be the same had the testimony been included. There is therefore no reasonable possibility that the error affected the verdict or that the error prevented the defendant from effectively presenting his defense.

*Is this error harmless?*

An error is harmless when the benefiting party shows beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record. This means the party proved there is no reasonable possibility that the error affected the verdict. *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011) (citing *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 [1967]).

In my review of this record, I find no important information that could affect the credibility of these two student-athletes was kept from this jury.

The court charged with managing this trial did not err when it sustained the objection. I find no error here. But, even if there was error, it was harmless because there is no reason to believe this ruling affected the verdict. O'Brien's convictions should stand.